

FILED

1  Scott J. Ferrell, Bar No. 202091
2  **NEWPORT TRIAL GROUP**
   A Professional Corporation
3  895 Dove Street, Suite 425
   Newport Beach, CA  92660
4  Tel: (949) 706-6464
5  Fax: (949) 706-6469
   sferrell@trialnewport.com
6

7  Attorneys for Plaintiff and the Class

8              **UNITED STATES DISTRICT COURT**
9
10            **CENTRAL DISTRICT OF CALIFORNIA**

11
                                        **EDCV11-02013 VAP (DTBx)**
12 FRANK FIGUEROA, individually, and on    Case No.
   behalf of all others similarly situated,
13
14            Plaintiff,                   **CLASS ACTION COMPLAINT**

15      vs.                               1. VIOLATION OF CALIFORNIA
                                             CIVIL CODE § 1750, et seq.
16                                           (Consumer Legal Remedies Act)
   LG SCIENCES, LLC; and DOES 1-10,       2. FALSE AND MISLEADING
17 Inclusive,                                ADVERTISING IN VIOLATION OF
                                             BUSINESS AND PROFESSIONS
18                                           CODE § 17200, et seq.
              Defendants.                 3. FALSE AND MISLEADING
19                                           ADVERTISING IN VIOLATION OF
                                             BUSINESS AND PROFESSIONS
20                                           CODE § 17500 et seq.

21                                        **JURY TRIAL DEMANDED**
22
23
24
25
26
27
28

2011 DEC 19  PM 2:59

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY _____

- 1 -
CLASS ACTION COMPLAINT

## I.  INTRODUCTION

1.     Defendant's product, Methyl 1-D, is marketed as a dietary supplement that is a prohormone and an anabolic precursor to testosterone, complete with the ability to "improve every aspect of your sexual performance too."   It is, in Defendant's words, "one of the hottest sports supplements on the market," and advertised by Defendant as "fully legal" and the "last legal hormonal agent."   The reality is that Defendant's claims regarding the legality of its product are false and misleading, because Methyl 1-D is adulterated and unlawful by virtue of the fact that some of its key ingredients run completely afoul of what a legal dietary supplement can contain.   The product is, simply put, illegally on the market.

2.     Plaintiff therefore brings this action to stop Defendant's deception and require it to make restitution for the false claims from which it has richly profited.

## II.  THE PARTIES

### A.     The Plaintiff

3.     Plaintiff, Frank Figueroa, is a California citizen who resides in this judicial district and who has purchased Methyl 1-D during the class period.

### B.     The Defendant

4.     Defendant LG Sciences, LLC, upon information and belief a Michigan company, has its principal place of business at 5889 Whitemore Lake Road in Brighton, Michigan, does business throughout the United States, and owns, manufactures, advertises, and distributes Methyl 1-D products.

5.     The true names and capacities, whether individual, corporate, associate, representative, alter ego or otherwise, of defendants and/or their alter egos named herein as DOES 1 through 10 inclusive are presently unknown to Plaintiff at this time, and are therefore sued by such fictitious names pursuant to California Code of Civil Procedure § 474.  Plaintiff will amend this Complaint to allege the true names and capacities of DOES 1 through 10 when the same have been ascertained.  Plaintiff are further informed and believe and based thereon allege that DOES 1 through 10 were

and/or are, in some manner or way, responsible for and liable to Plaintiff for the events, happenings, and damages hereinafter set forth below.

### III.   JURISDICTION AND VENUE

6.     This Court has jurisdiction over all causes of action asserted herein pursuant to the Class Action Fairness Act ("CAFA") because there exists diversity of citizenship for purposes of CAFA and because the amount in controversy exceeds $5 million.  Specifically, at least one member of the putative class is a citizen of a State different from the Defendant.

7.     Venue is proper in this District under 28 U.S.C. §§ 1391(c) and 1395(a), because Defendant's product that is the subject of this Complaint is advertised for sale, offered for sale, and sold within this judicial district, and because a substantial portion of the events giving rise to this lawsuit occurred in this District.

8.     Plaintiff has filed concurrently herewith the declaration of venue required by Civil Code Section 1780(d).

### IV.   BACKGROUND FACTS

9.     Methyl 1-D is a product advertised and/or labeled as "one of the hottest sports supplements on the market"; an "anabolic precursor to testosterone"; a "prohormone"; with "compounds [that] improve every aspect of your sexual performance too"; and "a complex group of nutrients designed to maximize hormonal functions."

10.     Methyl 1-D is widely advertised on the internet, in various magazines, and at the retail level.

11.     Methyl 1-D contains, among other ingredients, 3-beta-3-hydroxy-urs-12-ene-28-oic-acid, para-hydroxy-phenyl-ethanolamine, and 2-Phenyl-benzo(h)chromen-4-one.

12.     For at least the following reasons, 3-beta-3-hydroxy-urs-12-ene-28-oic-acid, para-hydroxy-phenyl-ethanolamine, and 2-Phenyl-benzo(h)chromen-4-one are

1    not capable of being sold lawfully in the United States and their inclusion in Methyl
2    1-D constitutes a violation of California and federal law:

3              (a)    3-beta-3-hydroxy-urs-12-ene-28-oic-acid, para-hydroxy-
4                     phenyl-ethanolamine, and 2-Phenyl-benzo(h)chromen-4-one
5                     are new dietary ingredients pursuant to 21 U.S.C. § 350b(c)
6                     because they are ingredients that were not marketed as dietary
7                     ingredients in the United States before October 15, 1994.

8              (b)    A proper notification was not submitted to the Food and Drug
9                     Administration by Defendant with respect to 3-beta-3-
10                    hydroxy-urs-12-ene-28-oic-acid, para-hydroxy-phenyl-
11                    ethanolamine, and 2-Phenyl-benzo(h)chromen-4-one at least
12                    seventy-five days prior to the first sale of Methyl 1-D, even
13                    though such a notification would have been required by virtue
14                    of the ingredients' inclusion in the product pursuant to 21
15                    U.S.C. § 350b(a)(2).

16             (c)    Even if the ingredients were marketed as dietary ingredients in
17                    the United States before October 15, 1994, they were not
18                    marketed in the same chemical composition or structure as in
19                    Methyl 1-D, as clarified in the Food and Drug
20                    Administration's "Draft Guidance for Industry: Dietary
21                    Supplements: New Dietary Ingredient Notifications and
22                    Related Issues" (July 2011) at Section IV.A.11.

23             (d)    3-beta-3-hydroxy-urs-12-ene-28-oic-acid, para-hydroxy-
24                    phenyl-ethanolamine, and 2-Phenyl-benzo(h)chromen-4-one
25                    are not present in the food supply as articles used for food in a
26                    form in which the food has not been chemically altered, as
                      would otherwise be allowed by 21 U.S.C. § 350b(a)(1).

27        13.    Nowhere in its advertising materials or label does Defendant disclose that
28   by including 3-beta-3-hydroxy-urs-12-ene-28-oic-acid, para-hydroxy-phenyl-

ethanolamine, and 2-Phenyl-benzo(h)chromen-4-one in the product, Methyl 1-D is being marketed and offered for sale unlawfully or that Methyl 1-D is an adulterated product under 21 U.S.C. § 350b(a).  In fact, the "LG" in Defendant's company's name purportedly stands for "Legal Gear," and Defendant makes the following affirmative claims with respect to Methyl 1-D:

    (a)   "the last legal hormonal agent on the market";

    (b)   "The Last Legal Prohormone Product Available";

    (c)   "Methyl 1-D is a legal and effective alternative to the banned prohormone supplements";

    (d)   "Methyl 1-D is fully legal";

    (e)   "You don't have to use illegal products just to have that ideal build";

    (f)   "gives people who don't want to use illegal anabolic steroids, an option to boost their hormone levels";

    (g)   "If you want to give yourself the best hormonal agent on the market without resorting to the 'dark side' you owe it to yourself to get a bottle of Methyl 1-D today";

    (h)   "With every prohormone we've created, we look for those compounds that do an awesome job of building muscles but don't cross that legal line"; and

    (i)   Methyl 1-D is a "Dietary Supplement."

    14.   The reality is, however, that Methyl 1-D does not have the characteristics and benefits nor the standard or quality touted by Defendant; the inclusion of 3-beta-3-hydroxy-urs-12-ene-28-oic-acid, para-hydroxy-phenyl-ethanolamine, and 2-Phenyl-benzo(h)chromen-4-one make Methyl 1-D adulterated and therefore unlawful; the marketing of the product by Defendant is unfair; and Defendant's failure to properly disclose the fact that the product has ingredients that are not permitted to be marketed lawfully in the United States is materially misleading.

/ / /

## V.    CLASS ACTION ALLEGATIONS

15.    Plaintiff brings this class action for damages and other monetary relief on behalf of the following class:

*All persons located within California who purchased for personal use any Methyl 1-D products beginning from four years preceding the date of the filing of this Complaint (the "Class").*

16.    Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

17.    NUMEROSITY: The proposed Class is so numerous that individual joinder of all its members is impracticable.  Due to the nature of the trade and commerce involved, however, Plaintiff believes that the total number of Class members is at least in the millions and members of the Class as numerous and geographically dispersed across California.

18.    COMMONALITY: There is a well-defined community of interest in the questions of law and fact involved affecting the Class and these common questions predominate over any questions that may affect individual Class members.

19.    TYPICALITY: Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and all members of the Class have been similarly affected by Defendants' common course of conduct since they all purchased Methyl 1-D products for personal use.

20.    ADEQUACY: Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff has no interests adverse to that of the Class. Plaintiff has retained counsel with substantial experience in handling complex class action litigation.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Class.

21.    SUPERIORITY: A class action is superior to other available methods for the fair and efficient adjudication of the present controversy.  Individual joinder of all members of the Class is impracticable.  Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed.  Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendants' common course of conduct.

## VI.   CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT
### (By Plaintiff and Class against Defendants)

22.    Plaintiff re-alleges the preceding paragraphs and incorporates them herein by reference.

23.    Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money as a result of Defendant's actions as set forth herein. Specifically, prior to the filing of this action, Plaintiff purchased a Methyl 1-D product for his own personal use.  In so doing, he reviewed, believed, and relied upon each of the preceding marketing and labeling claims.

24.    Prior to filing this action, Plaintiff's counsel mailed to Defendant, by certified mail, return receipt requested, the written notice required by Civil Code Section 1782(a).  An accurate copy of that letter is attached to this Complaint as Exhibit 1.

25.    Plaintiff has filed concurrently herewith the declaration of venue required by Civil Code Section 1780(d).  The declaration of venue is attached hereto as Exhibit 2.

26.    Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the California Consumer Legal Remedies Act since Defendant continuously and falsely made statements and omissions

regarding the purportedly lawful nature of Methyl 1-D's ingredients, thereby representing the product as having characteristics and benefits that it does not.  The policies, acts, and practices heretofore described were intended to result in the sale of Methyl 1-D products to the consuming public, and violated and continue to violate *California Civil Code* § 1770(a)(5) by representing that Methyl 1-D has characteristics, benefits and uses which it does not have, and *California Civil Code* § 1770(a)(7) by representing that Methyl 1-D products are of a particular standard or quality.

## SECOND CAUSE OF ACTION

### VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTIONS 17200, ET SEQ.

**(By Plaintiff and Class Against Defendants)**

27.    Plaintiff re-alleges the preceding paragraphs and incorporates them herein by reference.

28.    This cause of action is brought on behalf of Plaintiff individually and on behalf of all others similarly situated, and members of the general public pursuant to Business and Professions Code § 17200, et seq., which provides that "unfair competition shall mean and include any unlawful, unfair or deceptive business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter I (commencing with Section 17500) as Part 3 of Division 7 of the Business and Professions Code."

29.    Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money as a result of Defendant's false advertising and unfair business practices.  Specifically, prior to the filing of this action, Plaintiff purchased a Methyl 1-D product for his own personal use.

30.    Defendant's actions as alleged in this Complaint constitute an unfair or deceptive business practice within the meaning of California Business and Professions Code section 17200 in that Defendant's actions are unfair, unlawful, and misleading,

1  and because the advertising statements, including statements on the Methyl 1-D
2  products' labels and websites, are false and misleading within the meaning of
3  California Business and Professions Code sections 17200, et seq.

4      31.    Based on the foregoing, Defendant's false and misleading marketing
5  scheme violates *California Civil Code* § 1770, et seq. in that it represents that Methyl
6  1-D products have characteristics and benefits that they do not and are of a particular
7  quality or standard which they are not.  As a result, Defendant's conduct constitutes
8  an unlawful business practice within the meaning of *California Business* & Profession
9  Code § 17200 *et seq.*

10     32.    Based on the foregoing, Defendant's conduct violates the policy or spirit
11 of California's consumer protection laws, and significantly threatens or harms
12 consumers.   The benefits of Defendant's conduct are outweighed by the harm it
13 causes, and as such, Defendant's conduct is unfair within the meaning of California
14 *Business & Professions Code* § 17200, et seq.

15     33.    Based on the foregoing, Defendant fraudulently deceived Plaintiff and the
16 Class by representing that Methyl 1-D products have certain characteristics, benefits,
17 uses and qualities which they do not have and are of a particular quality or standard
18 which they are not.  In doing so, Defendant misrepresented and concealed material
19 facts from Plaintiff and the Class.

20     34.    Plaintiff seeks all remedies available under Section 17200 of the
21 California Business and Professions Code, including restitutionary and injunctive
22 relief, as well as attorneys' fees and costs.

## THIRD CAUSE OF ACTION
### VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTIONS 17500, ET SEQ.
### (By Plaintiff and Class Against Defendants)

26     35.    Plaintiff repeats and realleges the preceding paragraphs and incorporates
27 them herein by reference.

28

CLASS ACTION COMPLAINT

36.     This cause of action is brought pursuant to <u>Business and Professions</u> <u>Code</u> § 17500, et seq., on behalf of Plaintiff individually and on behalf of all California consumers similarly situated who purchased Methyl 1-D products for personal use at any time during the four years preceding the filing of this Complaint.

37.     As alleged herein, Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money as a result of Defendant's false advertising and unfair business practices in the amount of the purchase price of the Methyl 1-D products.

38.     Defendant, in its labeling and advertising of Methyl 1-D products, made false and misleading statements regarding their appropriate use and efficacy.

39.     For a period of time from four years prior to the filing date of this lawsuit to the present, Defendant was responsible for the manufacturing, marketing, and distribution of Methyl 1-D products.

40.     Based on the foregoing, Defendant fraudulently deceived Plaintiff and the Class by representing that Methyl 1-D products have certain characteristics, benefits, uses and qualities which they do not have.  In doing so, Defendant misrepresented and concealed material facts from Plaintiff and the Class.

41.     Plaintiff and the Class seek all remedies available under Section 17535 of the California Business and Professions Code, including restitutionary and injunctive relief, as well as attorneys' fees and costs.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff and members of the Class request that the Court enter an order or judgment against Defendant as follows:

1.     Certification of the proposed class and notice thereto to be paid by Defendant;

2.     Adjudge and decree that Defendant has engaged in the conduct alleged herein;

3.      For all legal and equitable remedies available under the Consumer Legal Remedies Act;

4.      For all legal and equitable remedies available under the Unfair Business Practices Act, *Business & Professions Code* § 17200, et seq.;

5.      For all legal and equitable remedies available under the False Advertising Law, *Business & Professions Code* § 17500, et seq.;

6.      For any and all other legal and equitable remedies that may be available, including damages, statutory penalties, attorneys' fees, costs, and pre-judgment and post-judgment interest; and

7.      For any and all such other and further relief that this Court may deem just and proper.


Dated: December 19, 2011                    **NEWPORT TRIAL GROUP**


By: _____
            Scott J. Ferrell
            *Attorneys for Plaintiff and the Class*

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure Section 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated:  December 19, 2011

NEWPORT TRIAL GROUP
A Professional Corporation
Scott J. Ferrell

By: _____
     Scott J. Ferrell

Attorneys for Plaintiff

CLASS ACTION COMPLAINT



# NEWPORT
## TRIAL GROUP
*A Professional Corporation*

895 Dove Street, Suite 425
Newport Beach, CA 92660
Phone(949) 706-6464
Fax (949) 706-6469
www.trialnewport.com

September 16, 2011

## BY CERTIFIED MAIL – RETURN RECEIPT REQUESTED

LG Sciences
President and CEO
5889 Whitemore Lake Road
Brighton, MI  48116-1998

      *Re:*     *Ongoing Violations of California Consumer Legal Remedies Act*

Ladies and Gentlemen:

      **Please give this letter your complete and immediate attention.**

      I am writing on behalf of an individual Californian, as well as a putative class of similarly situated persons, to advise you that we believe you are violating the California Consumer Legal Remedies Act (the "Act").

      Specifically, you label, advertise, and sell the product Methyl 1-D.  Your labeling and advertising advise that the product is a "dietary supplement" and includes the ingredients 3beta-hydroxyandrost-5-ene-17-one; 3-beta-3-hydroxy-urs-12-ene-28-oic-acid; para-hydroxy-phenyl-ethanolamine; and 2-Phenyl-benzo(h)chromen-4-one.

      We believe the inclusion of these ingredients in your product are unlawful because these ingredients are steroids or steroid-like substances.  Our belief is based on the fact that the ingredients are not dietary ingredients such as vitamins, minerals, amino acids, herbs or other botanicals; nor are they concentrates, metabolites, constituents, extracts or combinations of any such dietary ingredients. Thus, because Methyl 1-D has ingredients that are not dietary ingredients, we do not believe they qualify as "dietary supplements."  <u>See</u> 21 U.S.C. § 321(ff).  Rather, as the product clearly does claim to affect the structure or function of the body by its testosterone-boosting, anabolic properties, it appears to be a drug.  <u>See</u> 21 U.S.C. § 321(g)(1)(C). If our belief is correct, and we believe it is, the inclusion of the above ingredients in Methyl 1-D makes the product an unapproved "new drug" because it is not generally recognized as safe and effective for its labeled uses, as well as a "prescription drug"

September 16, 2011
Page 2

due to its toxicity or other potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use, making it not safe for use except under the supervision of a practitioner licensed by law to administer the product. See 21 U.S.C. § 321(p) and 21 U.S.C. § 353(b)(1)(A). For these reasons, we contend that Methyl 1-D is falsely and misleadingly advertised as a "dietary supplement," in violation of the Act.

Even if the inclusion of these ingredients do not make Methyl 1-D a drug, we believe they are certainly new dietary ingredients (NDIs) because they are dietary ingredients that were not marketed in the United States before October 15, 1994. See 21 U.S.C. § 350b(c). Our understanding is that a NDI notification was not submitted to the FDA 75 days prior to the first sale of your product, even though we believe such a notification would have been required. On that point, we note that these ingredients do not appear to be dietary ingredients that have been present in the food supply as articles used for food in a form in which the food has not been chemically altered. See 21 U.S.C. § 350b(a)(1). Nor do we believe you would have sufficient information, to include citations to published articles, supporting a proper NDI notification and the notion that your product would reasonably be expected to be safe when used under the conditions recommended or suggested in the product's labeling. As a result, we believe Methyl 1-D is an adulterated product. See 21 U.S.C. § 342(f). It is therefore on the market unlawfully, in further violation of the Act.

We respectfully request that you agree to irrevocably stop all unlawful business practices and false and misleading claims with respect to the advertising, labeling, and sale of Methyl 1-D. Given that our primary goal is to enjoin your unlawful actions, we will agree to take no further action in this matter – nor make any claim for attorneys' fees or other relief – if you will agree to conform your conduct to the requirements and prohibitions of the Act.

Very truly yours,

NEWPORT TRIAL GROUP
A Professional Corporation

Scott J. Ferrell

SJF/lb

EXHIBIT 1

Exhibit 1 Page 14

1      I, Frank Figueroa, declare as follows:

2      1.     I am a Plaintiff in this action, and am a citizen of the State of California.  I have

3  personal knowledge of the facts herein and, if called as a witness, I could and would testify

4  competently thereto.

6      2.     The Complaint in this action, filed concurrently with this Declaration, is filed in the

7  proper place for trial under Civil Code Section 1780(d) in that San Bernardino County is a county in

8  which Defendants are doing business.

10     I declare under penalty of perjury under the laws of the State of California that the foregoing is

11  true and correct.

Frank Figueroa